**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION**

**Princeton T. Brown**                                                          **Plaintiff**

**v.**                                                      **No. 3:20-cv-715-BJB-CHL**

**Louisville/Jefferson County Metro**                                **Defendants**
**Government, et al.**

\* \* \* \* \*

### MEMORANDUM OPINION & ORDER

After Louisville Metro Police arrested Princeton Brown, he sued the Louisville/Jefferson County Metro Government, the mayor, and several police officers. After some of the defendants—all supervisors—filed a motion to dismiss, Brown amended his complaint. Then the supervisory defendants filed a second motion to dismiss, which is the subject of this order, and which Brown didn't respond to. Amended Compl. (DN 7) ¶¶ 31–34. The other defendants—the officers who allegedly carried out Brown's actual arrest—have not filed a motion to dismiss, and Brown's claims against them will proceed regardless of whether the Court grants this motion. *See* Answer (DN 10). The Court agrees with the supervising officers that Brown hasn't stated a legally valid claim against them, and grants their motion to dismiss.

\* \* \*

The fundamental flaw with Brown's claims against the supervisory defendants—Metro Government, Mayor Fischer, Chief Conrad, Assistant Chief Chavous, and the "[u]nknown" supervising officers—is their lack of factual support. Amended Compl. ¶ 6. The amended complaint alleges that Officers Burba, Mills, and Preston used excessive force in arresting Brown and that Officer Moseley helped Officer Mills to "fabricate[] charges including resisting arrest" that prosecutors filed against Brown. Amended Compl. ¶¶ 16–27. This part of Brown's lawsuit contains factual allegations about the arresting officers' interactions with Brown and his resulting injuries that provide those defendants with adequate notice of the claims against them. *See id.*

As for the supervisory defendants, however, the amended complaint alleges that they are liable for taking "no meaningful action to monitor, properly train, [or] discipline" the arresting officers and through respondeat superior. ¶¶ 32, 34, 73, 83. These conclusory statements are the only factual allegations concerning the supervisors' conduct. So even taking "all of the factual allegations in the complaint as true," as the Court must, Brown has not stated a plausible claim. *Ashcroft v. Iqbal,*

556 U.S. 662, 678 (2009). Closer examination, moreover, reveals additional reasons why each theory of liability raised by Brown against these defendants must fail.

**1. Official-capacity suits and municipal liability.** In addition to his claims against Metro Government, Brown sued all the individual defendants, including the supervising officers, in their official and personal capacities. Amended Compl. at 1 The law treats the official-capacity suits as suits against the government. *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985). And municipalities may not be held liable based on "respondeat superior"—the mere fact that they employed an employee who may have violated a plaintiff's rights. To the contrary, under *Monell v. Department of Social Services*, a municipality is liable only if an illegal "policy or custom" of the government caused the constitutional violation. 436 U.S. 658, 694 (1978). Plaintiffs may show such a policy or custom through:

> (1) the existence of an illegal official policy or legislative enactment;
>
> (2) that an official with final decision making authority ratified illegal actions;
>
> (3) the existence of a policy of inadequate training or supervision; or
>
> (4) the existence of a custom of tolerance or acquiescence of federal rights violations.

*Wright v. City of Euclid*, 962 F.3d 852, 880 (6th Cir. 2020) (quotation omitted).

Brown has not alleged that Louisville had a policy or custom of the first type. His pleadings do not point to any "official policy or legislative enactment" that violated his rights.

As to the remaining three categories, Brown merely asserts that these defendants "acquiesce[d] and ratifi[ed]" the arresting officers' conduct "in failing to monitor, discipline, and train" them. Amended Compl. ¶ 34; *see also* ¶¶ 48, 58. But the Court needn't accept as true these "formulaic recitation[s]" of legal requirements as facts. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). And even if these recitations counted, they wouldn't suffice: both inadequate-training and custom-of-tolerance theories (the third and fourth listed above) require "a showing of prior instances of unconstitutional conduct" or "inadequat[e] investigati[ons]" that put the municipality "on notice." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). The amended complaint doesn't allege past conduct of any sort. Nor does Brown assert that any of the supervisory defendants had "final decision making authority," which forecloses the second route—ratification. *See Brooks v. Spiegel*, 2021 WL 4026728 at * 1 (6th Cir. Sept. 3, 2021) (requiring identification of the final decisionmaker to support ratification theory).

**2. Individual-capacity claims.** These claims require a showing that the public official "at least implicitly authorized, approved, or knowingly acquiesced in

the unconstitutional conduct of the offending officers." *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982). No factual allegations suggest that the police chiefs or other commanding officers were even aware of Brown's arrest or that they approved the actions before or after the fact.

The common-law negligent-supervision claims against the commanding officers in their individual capacities fail for the same reason. Kentucky law recognizes liability for harms that result from the supervisor's negligence or recklessness

> (a) in giving improper or ambiguous orders or in failing to make proper regulations; or
>
> (b) in the employment of improper persons or instrumentalities in work involving risk of harm to others;
>
> (c) in the supervision of the activity; or
>
> (d) in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.

*Porter v. Louisville/Jefferson County Metro Gov't*, No. 3:12-cv-829, 2017 WL 3485062, at *4 (W.D. Ky. Aug. 14, 2017) (quotation omitted). But nothing in the amended complaint describes anything the supervises did or failed to do that would create even an inference of negligence.

**3. Due Process.** Brown raises a separate Fourteenth Amendment claim based on his allegedly "unlawful seizure." Amended Compl. ¶¶ 43–48. This fails for a more basic reason: "*all* claims that law enforcement officers have used excessive force . . . in the course of an arrest . . . of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989). Courts in the Sixth Circuit "analyze excessive force claims during the 'seizure' of a free citizen under the Fourth Amendment's 'objective reasonableness' standard." *Reich v. City of Elizabethtown*, 945 F.3d 968, 978 (6th Cir. 2019).

**4. State-law claims.** The Kentucky claims, moreover, face insurmountable hurdles separate from their inadequate pleading. Brown asserts that Metro Government is liable on the basis of respondeat superior for the arresting officers' torts. Amended Compl. ¶¶ 67, 73, 83. Metro Government is a consolidated local government entitled to sovereign immunity, however, and has not waived its immunity from suit. *See* KRS § 67C.101(2)(e) ("A consolidated local government shall be accorded the same sovereign immunity granted counties, their agencies, officers, and employees."); *Yanero v. Davis*, 65 S.W.3d 510, 526 (2001) ("Counties [are] political subdivisions of the state and … [have] sovereign immunity."); *Jewish Hosp. Healthcare Servs., Inc. v. Louisville/Jefferson County Metro Gov't*, 270 S.W.3d 904,

3

907 (Ky. Ct. App. 2008) (Metro Government has sovereign immunity).  This immunity bars Brown's respondeat superior claim for the arresting officers' torts as well as the negligent-supervision claim against Metro Government.  *See Univ. of Louisville v. Martin*, 574 S.W.2d 676, 677 (Ky. Ct. App. 1978).

Brown also alleges that the individual supervisory defendants "failed to … train, supervise, audit, intervene, and discipline" the arresting officers.  Amended Compl. ¶¶ 87–88.  This appears to assert a claim under the Kentucky Constitution's own search-and-seizure provision, which is analogous to the federal Constitution's Fourth Amendment.  *See* KY. CONST. § 10.  But that provision does not directly create a private right of action.  *St. Luke Hospital v. Straub*, 354 S.W.3d 529, 537 (Ky. 2011); *accord Crosby v. Univ. of Ky.*, 863 F.3d 545, 558 (6th Cir. 2017) ("This leaves [plaintiff]'s complaint as requesting only monetary damages in connection with his claim against the individual defendants for violating the Kentucky Constitution. And because Kentucky law does not recognize such a cause of action, the district court did nor err in dismissing Crosby's claim.").

## ORDER

The Court grants these supervisory defendants' motion to dismiss (DN 9) and dismisses all claims against LaVita Chavous, Steve Conrad, Greg Fischer, Louisville/Jefferson County Metro Government, and "Unknown LMPD Commanding Officers" (Amended Compl. ¶ 6).   The Court denies their previous motion to dismiss (DN 4) as moot.